IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| United States of America § § § § § v. § § Broderick East § § | Case No. 4:23-cr-00397-11 |

## ORDER REVOKING RELEASE

On October 16, 2024, the Court held a hearing to determine whether Defendant Broderick East violated conditions of his release and, if so, what the consequences should be. Based on the evidence, and as pronounced on the record, the Court concluded that East's serious violations of his release conditions require that his bond be revoked.

Pursuant to 18 U.S.C. § 3148(b), an order of revocation and detention is mandatory if the Court finds (1) either probable cause that the defendant committed a crime while on release, or clear and convincing evidence that the defendant violated some other condition of release; and (2) either the factors from Section 3142(g) indicate that there is no condition or combination of conditions that will reasonably assure that the defendant will not flee or pose a danger, or that the defendant is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b). In addition, a finding

of probable cause that the defendant committed a crime while on release triggers a rebuttable presumption that no condition or combination of conditions would assure that the defendant will not pose a danger to any person or the community. *Id.*

The evidence at the hearing was more than sufficient to establish probable cause that Defendant committed new crimes while on release. First, Defendant has been charged in Montgomery County with Simple Assault-Family Violence, a Class A Misdemeanor, and Interfering with Emergency Phone Call, a misdemeanor, stemming from a September 9, 2024 attack on his girlfriend and mother of his children, Amber Wright. Wright's account of the events, both her formal written statement and a verbal statement captured by the arresting officer's body camera footage, reflect that Defendant grabbed Wright by the front of her shirt while attempting to drag her, assaulted her by placing his hand around her neck, and seized her phone to prevent her from calling 911.

Defendant makes much of Wright's subsequent disavowal of her statements about Defendant's conduct. But her original account was corroborated by the arresting officer's report of seeing discoloration around Wright's neck, in the area where she claimed Defendant had grabbed her, video footage showing Wright with a torn shirt, and a subsequent statement by a witness who saw it all happen and intervened by removing Defendant's hand

from Wright's neck.  It is also sadly common for domestic violence victims to retract their allegations, particularly under these types of circumstances, where the perpetrator is providing financial support to the victim and their shared children (as the bond report reflects here).  Moreover, the district attorney is pressing forward with the charges against Defendant notwithstanding Wright's attempts to withdraw her allegations.  Ample probable cause indicates that Defendant committed the charged offenses.

    Likewise, both the arresting officer's testimony and his body camera footage provide probable cause to support a third pending charge against Defendant for Resisting Arrest, Search or Transport, a misdemeanor.  After officers initially placed Defendant in the squad car, Defendant dropped to the ground, thrashing and attempting to strike his head on the ground while officers fought to hold him still, yelling variously and repeatedly that he hadn't done anything and couldn't go to jail, that he needed to go to the "psych ward," and (at least once) that "I got anger management problems."  He struggled so mightily and forcefully that he knocked the testifying officer's body camera to the ground.  And even after an officer placed a protective helmet on Defendant's head, it still took at least four officers to get him back into the squad car.  This is because Defendant braced his feet to push against the squad car while the officers attempted to push him inside.  Ultimately, the arresting

officer who testified at the hearing described how he had to grab Defendant by the leg and drag him into the vehicle.

Defendant argued that his actions did not involve force aimed at the officers themselves, which he contended would negate the requirement that he prevented or obstructed his arrest "by using force against the peace officer." *See* Tex. Penal Code Ann. § 38.03(a).  But the camera footage indicates that Defendant repeatedly thrashed, pulled, and pushed against the officers, forcing them to struggle physically with him—for many minutes—while trying to effectuate his arrest and transportation to the jail.  This physical struggle demonstrates more than a fair probability that he used the requisite force in opposition to those officers.  *See, e.g., Finley v. State*, 484 S.W.3d 926, 928 (Tex. Crim. 2016) (affirming conviction under Section 38.03 of the Texas Penal Code where defendant "pull[ed] against the officers' force" by pulling away from them); *Elahee v. State*, 2016 WL 7232452, at *4 (Tex. App.—San Antonio Dec. 14, 2016, no pet.) (affirming conviction of defendant who pushed against officers, including by "push[ing] back against the patrol car and both of the officers to avoid being placed inside the car"); *Roberson v. State*, 2016 WL 7187466, at *2 (Tex. App.—Amarillo Dec. 8, 2016) (finding sufficient evidence to support conviction where defendant pushed back against officer and struggled to free himself from the officer's grip).

Under 18 U.S.C. § 3148(b), the foregoing probable cause findings raise a presumption that Defendant's release poses a danger the community or another person, such that his release should be revoked. Defendant failed to rebut that presumption. Quite the contrary, Defendant's violent conduct toward Amber Wright shows that he does, in fact, pose a danger to her. Unrebutted evidence also showed that Defendant has violated a protective order prohibiting him from going to Wright's residence. As Defendant's supervising U.S. Probation Officer testified, Wright complained to her that Defendant continued showing up at her residence notwithstanding the protective order.

Even apart from the presumption, the Court finds that Defendant is unlikely to abide by any conditions of release that could be fashioned to protect public safety and ensure that he does not commit new crimes. Defendant violated a serious and fundamental condition of release by committing new crimes, including those involving violence and failure to follow directives of peace officers. He then violated a protective order designed to protect the safety of the victim whom he assaulted. In addition, Defendant disregarded basic requirements that he work full time and supply proof of same,[1] and report

---

[1] The Court finds that documents purporting to substantiate Defendant's full-time employment with his designated third-party custodian (for June and July 2024) were falsified. Those purported time sheets had identical time entries, week after week, down to the fraction of the hour, and included entries for dates that had not yet

all contact with law enforcement. Indeed, he never told his supervising Probation Officer about his September 9, 2024 arrest, which the Officer discovered instead through an NCIC alert.

Defendant's conduct renders him a poor candidate for continued supervision. More to the point, the Court has no confidence that Defendant would comply with any new conditions that could be imposed—even if he had rebutted the presumption warranting his detention, which he did not.

Accordingly, it is **ORDERED** that Defendant Broderick East's bond is **REVOKED** and that he be **DETAINED** pending trial.

Signed on October 17, 2024, at Houston, Texas.

*[signature: Yvonne Y. Ho]*
Yvonne Y. Ho
United States Magistrate Judge

---

occurred before the time sheets were sent. Given Defendant's inability to read or write, however, it does not appear that Defendant created those fake timesheets. But they obviously disqualify his third-party custodian, who submitted those falsified documents to the U.S. Probation Office.